Okay, our next case is in re Detention of Morris and that is case number 415-0343 for the appellant. We have William Davis II in for the appellee, Drew Meyer. Mr. Davis, are you ready to proceed? I am, Your Honor. Just to correct, I'm not the first William Davis. I'm the only one. Well, I have two Roman numerals here for the second, so you'll just have to be the second today. You can be the first. I'll be the second for the day, Your Honor. No, I'm sorry. Go ahead. May it please the Court, Counsel, Your Honors, good afternoon. On October 9, 1998, almost a little over 18 years ago, Gregory Morris was one of the first individuals in the state of Illinois to have a SVP, a sexually violent person's petition, filed against him. He was one of the first people to be detained temporarily and then subsequently judged by a jury to be sexually violent. The trick in this case, the issue in this case, comes down to the fact that as I said on October 9th is when the petition was filed, he was detained, October 9th was also his release date, and the SVP petition statute, excuse me, at the time required that these the date of discharge from the Department of Corrections. It is a very technical question and issue as to what the word before means. Before means before. There is no question as to what that word means. Before would mean in this instance October 8th, 1998 until all the way before that to the Big Bang or creation. That's what that would mean. Your Honors, in 2013, specifically August 26th, 2013, Mr. Morris filed a verified petition for relief from judgment. Wasn't that a tad late? It was a bit late. That's true, Your Honor. It first came up actually several years before in, I believe it was 2004, he filed a writ of habeas in the Circuit Court of Will County. There was short brief hearings up there. It did go to the 3rd District on an issue. The 3rd District denied it at that point. I believe, and those are all in the records, those were all filed. But as to our issue today, like I said on August 26th, 2013, he filed this petition. The state moved to dismiss. It appended. The state appended to its response or to its motion to dismiss the writ, the motion for writ of habeas corpus in Will County and subsequent rulings. The state argues that it's untimely and that ultimately is what the issue is presented this court. Well, the statute says 2 years, so you're untimely, aren't you? Your Honor, ultimately there's case law that does support and does allow for extension for extenuating circumstances to ensure that unfair or unjust ends do not occur. What's unfair and unjust here? He didn't know about what would happen the day it happened? Your Honor, what's... 2 years? Well, Your Honor, the unjust action is that the day he was released, he was detained on a petition that was filed untimely by the state. And as this court... The untimeliness of the petition, as you allege it, was that clear on the record? Clear to this respondent? I mean, as clear as the fact that obviously there would be a file stamped, and I believe the file stamped copy is at least a part of the record. Well, I suppose what I'm asking is this, the legislature said you have 2 years to bring these extraordinary actions under 214.01. Maybe there's something hidden? Nothing hidden here. This is, what, 14 years too late after the 2-year period? Why shouldn't this court abide by the legislative judgment that 2 years is all you get? Your Honor, like I said, the case law does support allowing and actually excusing the due diligence. There is some case law, particularly the Kulakowski case, which I believe was this court actually now that I think that, where... I think it was the 3rd District. It was the 3rd District, and I apologize for that. I think it came to mind that it was this court because the Kulakowski decision references the Community First Credit Union case, which was a decision of this court, where this court did excuse the exercise of due diligence by Ampad, a company that was being sought to get wage garnishments, but wage garnishment in the Community First Credit Union case as against Ampad was an impossibility because federal rule, federal law did not allow for the wage garnishment that was defaulted. So the court, this court said, well, they did not act in due diligence in defending their claim, in defending this issue, but it's an impossibility anyway. It's a legal impossibility. So we excuse the due diligence. In fact, this court stated, a petitioner's lack of due diligence may be excused under extraordinary circumstances necessary to prevent the unjust entry of default judgments and to affect substantial justice. Did we have a default judgment here? Pardon, Your Honor? We didn't have a default judgment here. That's true, Your Honor, and the Kulakowski case is also a default judgment. However, the actual going the case, the original initial case back in 1998, 99, I believe 2000, should not have gone to the end. It should not have gone all the way to a jury. What did the statute say about the remedy if the state failed to act in a timely fashion? I don't believe the statute had a remedy, Your Honor. So you're assuming that the remedy is you can't go forward, that he walks free. Your Honor, the issue of timeliness of filing these commitment proceedings, these commitment petitions, have come up in one or two cases. One of them is in Ray DeMere, which is referenced throughout the pleadings and is a decision of this court from 2001, where the state, and this is not SVP or SDP, it's a run-of-the-mill civil commitment mental health issue, but the state had a requirement to file the petition and necessary paperwork within 24 hours of Mr. DeMere's admission to the psychiatric unit, and they did not. They just didn't do it. So on appeal, this court stated that the state failed to file the petition and paperwork within the 24 hours. Thus, the trial court committed an independently reversible error in denying DeMere's motion  His motion is dismissed. The state's petition. Were we right to so hold? I didn't hear. Sorry, Your Honor. Were we correct to so hold? I believe so, Your Honor, because in these cases where you have commitment of individuals, there's a definite liberty interest that must be protected. Well, 14 years passed in this case. I guess there's no limit to how long this could go. It could have been 24 and you'd still be here, aren't you? Not past today, Your Honor. Well, I mean, if it was, you know, it happens to be 2016, I guess you filed this matter. It could have been, I mean, he's still in custody, 2026. There's no limit. There's no end. Your Honor, I think substantial justice, equity requires that there be no end, or at least that in this instance. Why is that the case? I keep asking you, what part of the argument you're making today wasn't known to this defendant and to his counsel within the day it happened, or within two years thereafter, after final judgment, which is the legislative judgment, is how much time he should have. And Your Honor, nothing was hit. So if that's the case, then we're talking about substantial justice. I guess what you're saying is there's no reason that this court should ever respect the two-year legislative judgment on the time in which you can file such a 214-01, isn't it? Isn't that what you're essentially arguing? Not necessarily, Your Honor, because I believe that the, like I said, I think that the instances that would come up can be different. You know, obviously we're here now in 2017. If the timing were different, we were here ten years from now, my argument would be the a possible lifetime, as this court and everybody here knows, a possible lifetime commitment. So there's no requirement that he act with diligence to respect, to protect the rights that you claim were violated? There is, Your Honor, but the courts can excuse that diligence. Why should we? You keep telling me we can. Number one, I'm not sure we can. I'm not sure the cases that have suggested we can are correct. But what is the compelling factual circumstance justifying our doing so in this case? Your Honor, in this case, it is the fact that it's a commitment, that his liberty interests have been... So in the SVP, then, 214-01, the limitation is unapplied? I don't know if I want to go that far, Your Honor, but I would say that the court can in its discretion exercise that judgment. And as the court sits here reviewing de novo, the circuit court, this court can exercise its judgment, its discretion, in the light most favorable to Mr. Morris, because we're here on the state's motion to dismiss. And so the court needs to review that in that light. And I believe that in that, in reviewing this in the light most favorable to Mr. Morris, I think that can include saying, we will excuse some of this diligence, at least to the point that we can send this back to the circuit court and have further hearings, possibly present evidence as to what happened. If there needs to be amendments to his petition, whether there's any sort of ineffective assistance issues, that might be raised, Your Honor. These are serious issues. These are serious issues. They lead to his possibly lifetime commitment, at least for the last 18-some-odd years' commitment, in a fashion that if things had gone perfectly, if things had gone perfectly, he would not be there. If this issue had been raised in 1998-1999, during that initial era, this would not be an issue. He would not have been in there on this petition, because they did not file a petition timely. Your Honor, his petition shows that he was released on October 9th, or his date of release was on October 9th. There is some support and further pleadings that he actually was outside of Big Muddy Correctional Center, that he was a free man, and the state filed his petition that day and brought him back in. There is support of that in the record, at least his writings and his letters. There is support of that. I know the state's going to raise an issue with regard to in-rate detention of power, wherein the Illinois Supreme Court, in review of at least the timeliness of filing the SVP petition, used the anticipated discharge date. I'd like to address that very briefly in noting that Powell, when it's argued by the state, is very, very different from the case here. Powell is an issue where the respondent refused to sign his mandatory supervised release form. He's the one that caused the delay. He's the one that caused the issue. And he's the one that tried to benefit from the issue. So the Supreme Court said this is an absurdity to say the legislature would not assume an absurdity like this. That to allow a respondent to basically play fast and loose against the state with the time frames. Your Honors, in this case, the state knew the times. The state knew the dates. They want to have their cake and eat it too. The state, the record would show that at the time, the state knew that it was the general policy of the Department of Corrections to, if somebody's release date was on a weekend or a holiday, to release them the Friday before or the day before if it was a holiday on a general weekday. The state's evaluation was on July 21st, 1998, about two and a half months before his release date. And at least from my review of that evaluation, there's a little marking on it that says received 9-18-1998. I read that as saying that the Illinois Attorney General's Office received it on 9-18-1998. I think that's a fair assumption. Approximately three weeks before the release date. And so then they didn't file it until the day he was released. Your Honors, this is a very bizarre situation. I can't deny that. This is a situation where, like I said, were everything perfect in this world, then we would not be dealing with this now. It would have been dealt with possibly by this Court in 1999, 2000, 2001, whenever that was. I can't deny that. But this Court, according to the case law that I've seen with Kulikowski, Community First Credit Union v. Boswell, this Court can excuse, or under the phrase that can excuse, the timeliness requirements of 214-01 to overcome these sort of drastic instances where now we have somebody who, by all intents and purposes, in a reading of DeMere, he should not be in. The State did not file its petition to hold him, to detain him, for possibly until the day he dies. They did not file a time limit. And he has been in custody, he has been in detention ever since. And so I'm asking this Court, in its de novo review of the motion to dismiss, to look at this in the light most favorable to Mr. Morris, and to say that that can include, the trial court can include that and should include that, an excusing of this diligence. And that we send this back to the trial court for further testimony, for further hearings on the petition. And hope that the trial court gets it right. If there are no other further questions, then I will reserve any remaining time for rebuttal argument. Okay, thank you, Mr. Davis. Mr. Meyer. Good morning, Your Honors, and may it please the Court. I am Drew Meyer of the Illinois Attorney General's Office. We ask that this Court affirm the judgment of the circuit court for two reasons. First, because the 214-01 petition is overruled.   late under 214-01c. And secondly, because it is legally, the petition itself is legally insufficient in every relevant respect. First, respondent conflates the due diligence requirements under 214-01 with 214-01c timeliness. Those are two different issues. And both of them independently bar relief here. But taking the 214-01c statute of limitations first, this statute of limitations, by its plain language, only allows for two circumstances under which the limitations period can be exceeded. When the factual predicate is fraudulently concealed from the petitioner, and when the petitioner is under legal disability or duress that prevents him from raising the claim. Neither of those exceptions are present here. As Your Honors pointed out, respondent was aware of the factual predicate for his claim ever since October 9, 1998, throughout the two-year window for filing a 214-01 petition. That means that he could have raised it at trial and pursued it at trial in the original venue, but did not. Thereby, now I'm beginning to conflate the two standards. So he had the facts, the applicable facts, throughout the 214-01c two-year period. They were not fraudulently concealed from him. He was under no legal disability that prevented him from raising them. That, in and of itself, God bless you, God bless you, bars him from relief. Turning now, and because neither exception applies, the 214-01c time bar must be enforced. Because of appellant's conflation of the due diligence and 214-01c standards, his reliance on Kulikowski is replaced so far as it applies to the 214-01c statute of limitations. As he candidly admits in his brief, Kulikowski did not address 214-01c. The court there did consider a petition that was filed two days after the two-year time limit, but there's no indication that the parties raised 214-01c in that case because the court does not discuss it. As we point out in our brief, equitable considerations that hypothetically could militate against strict application of 214-01c are not present in this case, nor does the plain language of 214-01c allow for such equitable considerations. Again, it specifies only those two circumstances under which the statute of limitations can be ignored. Petitioner fails under, I should say, appellant fails because he fails to show any of the three requirements for 214-01 relief, that he has a meritorious claim or that he exercised due diligence in the trial court or in a 214-01 petition. Again, all the facts were available to him throughout trial, could have raised it there, but did not exercise due diligence, had all those facts throughout the window for filing a 214-01 petition, did not raise them. The fact that he was aware of this claim is proven by the fact that he raised it in his 2004 habeas corpus complaint, further demonstrating that there is no equitable reason for excusing the exercise of due diligence here. In fact, given these circumstances, granting respondent relief would require total disregard for the due diligence requirements. Finally, the claim that petitioner raises is itself not meritorious. In a case dealing with functionally identical language, the Illinois Supreme Court in Ray Powell held that the timeliness of an SBP petition should be determined according to a respondent's anticipated release or discharge date rather than his actual release or discharge date. It is undisputed in this case that the SBP petition was filed before respondents anticipated October 12, 1998 discharge date. Powell, of course, was rooted in the very clear legislative intent behind the act, which was to keep sexually violent persons out of society. And that fact distinguishes it immediately from People v. DeMere, in which the court construed the Mental Health Code, explicitly construed it strictly in the respondent's favor. However, here, that assumption is flipped, and we construe it in favor of keeping dangerous respondents in civil commitment. Petitioner states that the record shows that the Attorney General of the People were aware that petitioner was going to be discharged early, but the only evidence he cites for this fact is his own 2004 habeas complaint, which is not convincing evidence. Indeed, the record refutes the idea that the Attorney General was aware of his early discharge, because the SBP petition itself lists his October 12 anticipated release date as one of its factual predicates. Finally, Your Honors, as to the notion that due diligence requirements should be waived here because out of a raw, equitable concern that the judgment is unfair or unjust, it is quite to the contrary. Respondent's civil commitment is entirely just. It is consistent with legislative intent behind Section 15A. It is pursuant to a jury's verdict after a trial at which a respondent was represented by counsel, and it is in recognition of his persistent dangerousness. And if the Court has no questions, the people ask that this Court affirm the judgment of the Circuit Court. Thank you. Okay, thank you. I see no questions, so we can move on to rebuttal if there is any. I'll be brief, Your Honors. Thank you. Your Honors, the State referenced whether or not at the time, in 1998, the Attorney General's office or the State would have been aware, and that's like saying the left hand not knowing what the right hand is doing. The Attorney General's office is the Department of Corrections' attorney. It is the State of Illinois. Yes, the State of Illinois is a leviathan of bureaucracy, but it is presumed to know. Its own evaluator, I believe it was Dr. Buck, interviewed Mr. Morris almost three months beforehand. They had this several weeks beforehand, and they waited until after the last second to file this. Your Honors, that is the issue. That is the meritorious claim under 214.01, in reviewing DeMere. And I would note, DeMere, there are different reviews and different looks at these commitment statutes, but DeMere does have reference to safeguarding the public. They don't just, or this Court didn't just blow that off. There is at least a discussion that that is reviewed. Yes, there is a different, at least look at it, because you're looking at two very different situations, an SVP statute versus what I would consider more of a standard commitment. But the liberty interest is also the same. And I would argue to this Court that an SVP is more so than your, at least in Sangamon County, every Friday civil commitment hearing, possibly lifelong. As, at least for Mr. Morris, it has been these last 18 some odd years. Your Honors, the Kulikowski case does support that this Court, in its review, can relax or excuse when there is unfair, unjust, or unconscionable orders, unconscionable actions. And that is possible lifetime commitment, especially over these last 18 some odd years. Your Honors, I would ask that this Court, in its review, exercise such, exercise that ability, that it reverse the trial court's granting the State's motion to dismiss and remand this back for hearings on Mr. Morris' 214.01 petition. If there are no more questions, then I am completed. I see none. Thank you. Thanks to all three of you, or both of you who argued in the cases submitted. The Court stands in recess.